The third case for argument is Brian Mick v. Barrett Gibbons, et al. Mr. Viglianco? Good morning, Your Honors. May it please the Court, this is Zachary Viglianco on behalf of the third-party appellant, the Nebraska State Patrol. Sovereign immunity broadly protects unconsenting states, providing not merely a defense from liability, but full immunity from suit. From suit? That's correct, Your Honor. All right. What's the best case that a non-party is liable or subject to suit? We know the issues here. I mean, where do I go to find the best case or the best authority for that proposition? Well, Judge Kobus, I would point you to Judge Loken's decision in the DiGiordi case. The — this Court has specifically held that a third-party discovery request is a suit in the very closely related — What about Thomas? Thomas is also — that's where I would have gone next, Judge Loken. Even more significantly, it was written by the author of Minnesota DNR less than two years earlier involving the same dispute, underlying dispute with the same parties. Again, Judge Loken, I agree with you. I think that Thomas absolutely illustrates the principle here. And that's why Missouri DNR is appropriately understood, not to really be a sovereign immunity case. Fundamentally, that's a case about a discovery dispute. And when you consider the fact for something like Judge Beam being the author of both opinions, it's really hard to see how his excellent explication of sovereign immunity principles in Thomas could be squared with Missouri DNR if you understood Missouri DNR to fundamentally be a sovereign immunity case, which is why that's not the best reading of it. If you look at the — there are several factors about Missouri DNR that illustrate that it's really about a simple discovery dispute. Consider the posture. In 1993, the United States Supreme Court's decision in Puerto Rico aqueduct made very clear that denials of sovereign immunity were subject to the collateral order doctrine for immediate interlocutory appeals. Missouri DNR is four years later, but it wasn't raised via a collateral order doctrine. It was brought via mandamus. And why was it brought via mandamus? Because mandamus is the primary pathway that is used to bring interlocutory review of discovery orders. Then you can look at the Missouri DNR decision itself. I mean, the introduction to the opinion says that we believe the district court's order adequately protects all privileged information, and therefore we deny mandamus. No discussion of sovereign immunity. And you compare that to what Judge Beam said in Thomas when he said that the Eleventh Amendment and sovereign immunity is the undercurrent for all interactions between States in Federal court. So to what extent did the State agency raise sovereign immunity or the Eleventh Amendment in MDNR? I mean, there seems to be some dueling assertions in the briefs. So there is a very limited, almost tangential invocation of sovereign immunity in MDNR. But what it really was was effectively a law-of-the-case style argument. So in Thomas ---- But if it was tangentially raised and then you have us saying government units are subject to the same rules, I mean, it's not an easy question. Do you agree with that? I mean, the district court here, the magistrate court, just said that's not dicta. I understand that the district court and the magistrate judge felt that way. I think that if you examine the factors that we have set forth in our brief and are talking today, you'll hopefully ultimately agree that the appropriate read of Missouri DNR, the only charitable reading of Missouri DNR that can make Judge Beam's declarations and his clear declarations in Thomas and somehow square them with what happened in Missouri DNR, the only way you can understand how the same judge could come to such widely different conclusions is to understand that Missouri DNR was a case about a discovery dispute and not about sovereign immunity. I want to talk very briefly about what the nature of the sovereign immunity invocation in the Missouri DNR case was. So it's a follow-on case from Thomas, but Thomas was not presenting a categorical argument like the patrol has indicated here. In fact, as we set forth in our brief, you can look in the reply brief from the Missouri DNR case. The Missouri Department of Natural Resources expressly disclaimed the kind of argument the patrol has advanced here. I mean, if you look at the reply brief at page 4, they are talking about the arguments that the other side, the private party, had made. And they said that FAG Barings asserts the Department is claiming that it has complete Eleventh Amendment immunity from participating in any discovery in Federal litigation where it has not consented. That is not the Department's argument. So the argument that was presented in Missouri DNR was much more limited. In Thomas, the question was whether or not the Department could be involuntarily joined to a suit. So the question was a question of autonomy, that is, ensuring that the State of Missouri could present the environmental enforcement action that it wanted to do at a time and place of its choosing, in a form of its choosing, after it had completed the investigation that it wanted to. The attempt to involuntarily join the Missouri Department of Natural Resources interfered with the State of Missouri's autonomy by forcing them to go prematurely. The third-party discovery requests in Missouri DNR had a similar effect, because there was a confidential informant that was involved in the case who was providing information to the Missouri Department of Natural Resources. And the Department in Missouri DNR was concerned that by responding to the subpoena they would have to give up the information about who this informant was that would cut off their investigation. And they'd be joined as a party. Effectively. They would be by they would be forced to act sooner than they wanted to, which was what Thomas was about, forcing the Department to act earlier in the proceedings than it truly wanted to. It may have wanted to proceed in State court. It wanted to spend more time on its investigation. There was all sorts of reasons. And so the third-party discovery requests that Missouri DNR had was resisting had the same sort of effect. But it wasn't a categorical response. And we know that in no small part because Missouri DNR was participating in discovery. If you look at FAG Baring's brief, that's in Exhibit B of our motion for judicial notice, you can look at Romans 7 through 8. They talk about how Missouri DNR had already produced numerous documents to FAG and others in the case and had even made several key employees available for depositions. The Missouri Department of Natural Resources has not presented the sort of significant categorical approach that the Patrol is advocating for here and that Judge Loken's decision in De Jure, as well as cases from other circuits, like the Fifth Circuit's decision in Jones, the Tenth Circuit's decision in Bonnet. It's not that — that was not the argument that Missouri DNR was presenting. And because it's not the argument that Missouri DNR was presenting, Judge Beam was not engaged in a sovereign immunity analysis. The language that is thrown in at the very end is at most an aside, at most dictum. Why isn't the penultimate paragraph simply a recognition of there may be exceptions to not necessarily sovereign immunity, but it can be sovereign immunity, but there are exceptions to where you would permit, you would not permit this? I think that's right, Your Honor. That's as simple as my explanation. Yeah, I think that's very — The law is laid out in Thomas. It requires a suit, and it wasn't a suit in MDNR. But there are situations where maybe you could have a discovery that had the same effect as a suit on the party entitled to sovereign immunity. I certainly agree with the — So I want to say that de jure does provide a pathway forward here. It would be an anomalous result if the residual sovereigns that are the Indian tribes were afforded more sovereign immunity protection than the State of Nebraska or any other State. At most, these residual sovereigns are deserving of the same level of immunity. Why isn't an even simpler answer to MDNR is there was already a suit? We're all talking — we were talking, and I was involved in later aspects of that endless dispute. We were talking about responsible parties for a Superfund site, and FAG, which was an you know, somehow get out from under by having DNR blamed. So I agree — I mean, they were in a suit dispute. They certainly were, Judge Logan. And I think that the key here is that a Rule 36 deposition is clearly a suit. It implicates — it's a coercive judicial process. It follows — you know, you can look at what Thomas called a suit. You don't have to go there. I would not go there. These issues don't have categorical answers. And saying a Rule 60B deposition is a suit is a categorical assertion I would never accept. My colleagues might. Well, Your Honor, I think that the critical question here is whether or not the policy rationales that underlie sovereign immunity are implicated when you attempt to force a State to go through the disruptive process of responding to a Rule 30B6 deposition. But just to be clear, you are asking for a categorical holding from us. That is our primary position. We have alternative arguments that we think are relevant. But, yes, we do think that the State of Nebraska is categorically immune from Rule 30B6 depositions. Just like the tribe in DeJordi. And just like the tribe in DeJordi. That is correct. We think that the State of Nebraska is entitled to at least on par with the immunity that is afforded to tribes. And I want to stress for the benefit of the Court that that doesn't mean that we think that the State of Nebraska never has to give information as part of a suit. Of course, if the State of Nebraska is properly a party in front of a court's jurisdiction, it's subject to discovery and can't raise sovereign immunity. That's the value of the Procter & Gamble citation that is in Missouri DNR. You know, sovereign immunity does not apply when there is an ex parte young suit, when there's been an abrogation by Congress, or when the State has consented, you know, make itself a plaintiff. But it would in a 1983 action, correct? It would because Congress has not abrogated sovereign immunity as to the States themselves in 1983 action. Although, I also want to emphasize that that doesn't mean that there's still no pathways. There's two pathways in 1983 actions that are available. There's first the public records law, that Nebraska has a very robust public records law that will allow for the ability to obtain certain types of information. Maybe not exactly what a Rule 30b-6 deposition can provide, but similar things about policies as long as they're written down. And also, I want to emphasize that in this very case, we have taken a less than maximalist position. There were proceedings ongoing in the district court, attempts to engage in personal capacity depositions of members, employees of the Nebraska State Patrol. And the State Patrol did not object categorically to those depositions. We did move for a protective order, but that protective order was limited. We only wanted to ensure that the State of Nebraska's sovereign immunity was not subverted, that the personal capacity depositions were not an end run around this appeal. And we stated in our motion for a protective order that it would be perfectly fine for plaintiff's counsel to ask those troopers any questions about policies or things of which they have personal knowledge, and that the only limitation we asked was that they not be asked to speak on behalf of the patrol, to make determinative pronouncements about what the patrol's policy was, what the patrol would do in a certain circumstance. But they could talk about their personal understanding of policies. And the second facet of the protective order was that you don't require the individual. Is that a waiver of sovereign immunity in your mind, or was that outside the bounds of what you're asking us to hold? So it's not a waiver. Very importantly, this — But you suggested then you agreed and you had a protective order there, but you didn't have to allow those questions? So there — I actually think that there's precedent from other circuits and precedent in Federal context where Federal agencies have resisted even personal capacity depositions on the basis that talking to a personal employee of an agency is effectively obtaining information from the agency. We did not — But you could. I think it's possible. There's certainly precedent that suggests that that's possible. We have not taken that position because — But you are asking us for a per se rule or a categorical rule that the State is protected by qualified immunity. Would this affect how we write that? So I want to say we are asking the State of Nebraska, and the patrol as an instrumentality of the State of Nebraska, is asking for an absolute rule. You could absolutely, however, you could write an opinion that would be congruent with what we're looking for that says you can't take a 30B6 deposition because that's the patrol and that's the State, but you can take a personal capacity deposition. We would not have a problem with that. We think that that — That's not squarely raised in this case. So there's not, in this appeal, there's not a personal capacity deposition. In this case, in proceedings that continue, there is a personal capacity deposition. But this is about a 30B6. And we think we absolutely have a categorical ability to resist 30B6 depositions because that is against the State. The State of Nebraska is the instrumentality here. When you are a 30B6 designee, you're not speaking with your personal knowledge. You are speaking for the agency. They are downloading all of their information, all of the relevant facts, into that designee. It's highly burdensome. It impacts the dignity of the State. It compels them to respond to judicial processes. It implicates their time in Treasury. And it interferes with the public administration. Those are all the things that are in the public policy rationales that underlie sovereign immunity, and it's why we've presented our categorical approach. However, and I just want to stress, that categorical approach protects the State of Nebraska. We're asking for the rule like that, but we're not trying to cut off discovery in all of 1983 actions. We think that there are pathways, be it the public records lacked, personal capacity depositions, or the results of the political process. The people who think that the breadth of sovereign immunity is too broad here can go to the Nebraska legislature and ask them to expand their waivers, which they have done in State cases. I mean, Nebraska has a political subdivisions claims act, a State tort claims act. The State of Nebraska does waive its sovereign immunity and can make a political choice. That's ultimately the privilege of a sovereign to choose when it is amenable to suit and when it isn't. And so for all of those reasons, we would ask that you reverse the decision of the district court, sustain the motion to quash, follow the excellent guideline that is set forth in de jure that has been adhered to in subsequent cases like City of Webb v. Maplewood, where this court pointed to de jure as the path forward in future sovereign immunity cases involving States, and understand that Missouri DNR has been overread by courts, and this is an opportunity to clarify that it doesn't mean what some people think it means. What it is is a fact-bound, narrow decision that does not categorically exempt third-party discovery requests from sovereign immunity. It didn't have — it had very little to do with sovereign immunity. You can look to Thomas and de jure and all of the Supreme Court's case law that tells us about the boundaries of sovereign immunity and write a decision that will guide courts applying those principles in the future. Thank you. Thank you. Mr. Quay, is it? Yes. Thank you, Judge. Good morning, Your Honors, and may it please the Court. Greg Quay on behalf of Appellee Brian Mick, and I'm joined today by my co-counsel, Maren Chalupka, as well as Mr. Zutovern's sister, Kalina Zutovern. This appeal — Why do you need a 60B6 deposition? We need the 30B6 deposition, yes, Your Honor, because we need to depose the State Patrol about what trainings it provided to Trooper Wilkie and other troopers like him at the time of the shooting. And as the MJ noted, and this is at JA-201, that information cannot be obtained — Is the county sheriff's office back in the case? Well, the county is in the case. Yes, Your Honor, they are in the case. I thought everything was dismissed except the individual capacity claim against the NSP troopers. With respect to the patrol, all official capacity claims have been dismissed, Your Honor, and that was voluntarily based on our agreement to respect the State's sovereign immunity. So all that's being asked of the patrol right now is to provide information that they have relevant to the dispute. You want policy information from the State that will allow you to mail the county? Well, we want information relating to Trooper Wilkie's defense that he was acting justified under the circumstances, and we want to understand how did the patrol train officers to respond in these circumstances to evaluate his defense. And as the MJ — Why do you need five of them? Well, that was the patrol's decision, Your Honor. We subpoenaed for a Rule 30b-6 representative. They concluded that they needed to designate five people to talk about six topics of training, and that's their prerogative. And what they've told this Court is that the mere fact that those people have to spend time preparing is itself enough to invoke sovereign immunity. Judge Kobes, I heard — Six aspects of training, and you — I mean, this is — well, but you know what's going on. You're coercing settlement. No, Your Honor. We're trying to develop evidence to understand Trooper Wilkie's defense and make our case a trial. And the district court has — You're not going one step at a time. You're seeing how much pain you can inflict in the discovery process. Actually, Your Honor, I would disagree with that. Rule 30b-6 is efficiency promoting because it allows the patrol to choose — It's not used this way. Your Honor, I think it is in this way because, again, the patrol gets to choose. Who is the person who's actually most knowledgeable about this? Depose that person. That's the person who can speak best to this subject. And because they point us to that person, it allows us to skip all of the intermediate steps it might have taken to figure out who that person was and to get less precise information about the patrol's position. It seems to me that the argument being advanced, at least in part, is that the 30b-6 motion really is akin to bringing a lawsuit against us, because what you're really asking the us to do is to identify who are the people that were engaged in these policymaking decisions and these policy trainings, and that you're really then undermining the policies of the State and the State Highway Patrol, and that you're not really looking for fact information in the traditional sense. Like, if you ask the defendant officers who conducted the training, they'd say, yes, I went to training on such and such dates. We know law enforcement agencies keep all the dates. We know when they were trained. And you'd say, well, who was conducting the training, and who was the person who did the training, right? You know, it would be a different question if you were asking the State of Nebraska to tell us, well, we've identified that Trooper was at training on August 14th through August 17th, and that he was trained by someone from this office. He thinks it was this training officer or that training officer, and we'd like to confirm that, and then you identify this person, and you're just going to ask the factual questions, what did you train us about, right? And then you haven't implicated the State of Nebraska's sovereignty in any real way at that point. You're just saying, who trained you? What did they train us about? And then you are getting at just the information you're talking about. But by asking for the 30B6 certification, what you're asking for, what is the Highway Patrol, and who were the officials, and what was the training that was being done at that time, right? And that that is more akin to litigation against the State than merely discovery of the underlying facts. Now, I hear that's what their argument is that they're making, and I'm long-winded. I didn't mean to give a long speech. But I said, why are they wrong with that? Why is the most efficient way actually the 30B6 deposition as opposed to just the factual ladder? For two reasons, Your Honor. They're wrong, first of all, because we are seeking the factual information you described. We're asking the patrol, what did you train these officers to do? What was your interpretation of your policies? How would they have applied? What were you trying to tell officers to do in these circumstances? We're doing it on a policy level, not on a, what did, how did you train this particular trooper? We're doing it from the perspective of the patrol. What were they trying to communicate? You want policy. You want policy evidence. We want their understanding of what happened in those trainings. And the second reason they're wrong, the patrols, Your Honor, what they were trying to, because, Your Honor, it's, but Trooper Wilkie has said that he was acting justified under the circumstances. And a big component of that defense will be that he was acting in a way that was consistent. Your experts can comment on that. And we're also entitled, Your Honor, to obtain relevant evidence. You want to run through six or 10 or 15 patrol 30B6 witnesses to find one who will say, well, I don't think he's right about that. No, Your Honor. We didn't get to pick these witnesses. They picked them. They picked five of them. But you'll get them to identify more. And this is the way, this is the way these class actions work. Well, I'll just reiterate, Your Honor, two things. One, again, the master judge said that this subpoena was seeking relevant information. It was narrowly tailored to obtain that information. It sought information that couldn't be obtained from other sources, and they didn't object to any of those findings. So if those Let me switch a little bit. But Sure. How do you distinguish majority from your understanding of MD&R? Yes, Your Honor. Setting aside the arguments, but your proposition is MD&R, for what it stands for, other than the fact that one's a tribe. Well, Your Honor, I think that is the critical distinction. That's it, though, right? And, I mean, I would So why does that matter? Well, there are two. I would point to another one, Your Honor, but I do think that is critical. So I don't want to minimize it. And that's what this Court said in DeJordi. It said, we recognize that in the state sovereign immunity context, we have rejected this kind of effort to invoke sovereign immunity against a subpoena. It said that tribal immunity allowed it to reach a different rule, reflecting tribes' unique sovereignty. And that's Well, as, and again, this is what the law says. This is not a policy. As dependent sovereigns, right, who arguably, I mean, dissents for the Supreme Court have suggested it's a common law creation, whereas the states have the 11th Amendment and arguably a longer history. So doesn't the outcome here seem anomalous? And that is that states, in spite of the 11th Amendment, can be subject to a 30B6 subpoena in federal court, but tribes cannot. No, Your Honor. It's not anomalous. And thank you for asking that question, because I think it's critical. It's an assumption of theirs that if tribal immunity reaches something, it necessarily must also be the case for state immunity. And that's just incorrect. The tribal immunity is lesser in some senses. So, for example, Congress can abrogate tribal immunity under its Article I powers. It can't do that with state sovereign immunity. But tribal immunity is broader in other senses, including in this one. And that's what this Court recognized in the majority. Well, why, though? Because we said it. Well, I think you were right to say that, Your Honor. And the reason is because tribal We didn't say that it's broader. We said we didn't have to go into conflict necessarily with MDNR. Well, you said, Your Honor, at page 1104, that you recognize that what the tribe was asking you to do and what you did was to go further than the immunity available to states under the 11th Amendment or the federal government. And you were willing to do that because tribal immunity reflects tribes' original sovereignty predating the Constitution and the fact that they are entitled Which states also have. They have immunity, but they specifically You're saying that the 11th Amendment limited their immunity? No, Your Honor. I think it restored it to the founding-year understanding. Remember, states Which predated the Constitution, right? Yes, Your Honor. But the point is that states ratified the Constitution. They created the system we have in which Federal courts administer Federal law. And the one reservation they made, and we point to this at page 35 of our brief, the reservation they made was that they could not be sued as defendants. Sued in the context of state sovereign States can waive sovereign immunity and majority recognizes that Congress can limit or expand tribal immunity. That's correct, Your Honor. It has a pre-United States origin. It does, Your Honor. Entirely in the hands of Congress. Right, and Congress had not That's all we were saying in DeJordi. No, I think what you were saying was that you recognize that this rule, the DeJordi rule, would not work in the state sovereign immunity context because you had Missouri DNR on the books. And I'll reiterate, Judge Kobus, that you heard Now we get to decide that. No, Your Honor. Missouri DNR is still the binding law for We don't decide that. Wait a minute. The defining law is Thomas. You've got to have a suit. The word suit nowhere appears in MDNR. That's because it didn't need to be because of the context. Your Honor, MDNR did reject this argument that a subpoena is a suit. And I can show you that in several places. Let me start with the petition for writ of mandamus in MDNR. Here's what they said on page 2. The 11th Amendment is the constant undercurrent for all state interactions in Federal courts. Forcing MDNR to undergo Reading from, not our opinion. I was just pointing out, Your Honor, that the agency made the exact same argument that my friend on the other side does today. We can go to the opinion, Your Honor, if that would be helpful. I get arguments that border on the absurd in every immunity of any kind case I ever have to decide. Immunity is completely misunderstood or intentionally misunderstood by lawyers and sometimes courts all the time. Well, here's what Judge Beam said. And as you noted, Judge Beam wrote Thomas, so he was in the best position to know if Thomas applied to a subpoena. He said there is simply no authority for the position that the 11th Amendment shields government entities from discovery in Federal court. And I guess the State here is arguing the authority is Thomas, right? They are arguing, yes, that Thomas conflicts with Missouri DNR. Missouri DNR says Thomas does not conflict with Missouri DNR. That statement you just read is not categorical. We're talking about maybe there's no authority on the books. That doesn't mean that Judge Beam was saying and was deciding the question for a circuit law for a time immemorial. Well, let me make two responses to that, Your Honor. So, first of all, the categorical argument they made today, and they told you, Judge Kovas, they are seeking a categorical rule. That, at a minimum, is inconsistent with any interpretation of Missouri DNR. Even if, for example, you think Missouri DNR laid down a fact-bound rule, their categorical rule would mean that Missouri DNR should have come out the opposite way regardless, because as they said. But would it necessarily? I mean, because it seems to me that their argument is that 30b-6, because you're requiring the State to identify a witness as a representative of the State to implicate the State's policies, is the fundamental equivalent of being sued as a State. And the question is, is that an equivalent to the suit? I mean, and it's interesting that we got hung up on the Indian law case, but it strikes me that Indian sovereignty is a different thing. It's a dependent domestic nation that existed prior to the United States, and they never surrendered any sovereignty to the United States except by conquest. And if you look at what that leaves them with is whatever Congress wants to leave them with, and we have said that's not exactly coterminous with the Eleventh Amendment immunity, where the States have surrendered intentionally some of their immunity in order to be a participant in the Federal Republic. Okay. Now, the bottom line is, is that there's this really broad statement that's made by Judge Beam at the very end, at the penultimate paragraph, where he says, there is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in Federal court. And the big debate is, is there in fact otherwise a category of cases that so implicate the State and its sovereignty that they are akin to being actually sued? Or is it just what it says, that if you find it in the discovery rules, it's just never a problem? That's the real debate, and that's the one we're ultimately going to have. And their issue is that they say 30b-6 looks a lot like suing us. And your answer is, that ain't so. Tell me why. For two reasons, Your Honor. So, first of all, this Court has interpreted Missouri DNR the way we have, and I'd love to go through that. But second of all — You don't have time. Quick answer. You're out of time. Okay. You said it in Altell. You said it in the first McGehee opinion. And Judge Malloy said it in his concurrence in Jones. Second, though, even if you think that Missouri DNR laid down some kind of fact-dependent rule, this does not meet that standard. For two reasons. First of all, again, they never oppose the magistrate judge's evaluation of whether this is unduly burdensome. Those kinds of arguments are waived. And second, all they have proffered is the claim that five employees will have to spend five hours preparing for a deposition. That is not the kind of constitutional — That's an answer. Well, if there are no further questions, Your Honor, I would just ask this Court to recognize that Missouri DNR answers this question, it was correctly decided, it preserves Federal courts' essential ability to obtain relevant evidence, and therefore, this appeal should — this report should be affirmed. Well, very good. The case has been thoroughly briefed and hardened. It's a conceptually difficult case. We will take it under advisement. The Court will be in recess for about 10 minutes. Thank you.